1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

THE BANK OF NEW YORK MELLON,

8

Plaintiff(s),

9

v.

10

DESERT SHORES COMMUNITY
ASSOCIATION, et al.,

11

12

Defendant(s).

Case No. 2:16-CV-1564 JCM (PAL)

ORDER

13

14    Presently before the court is defendant Desert Shores Community Association's (the

15 "HOA") motion to dismiss.  (ECF No. 11).  Plaintiff Bank of New York Mellon ("BNYM") filed

16 a response (ECF No. 22), and defendant filed a reply (ECF No. 28).

17    Also before the court is plaintiff's motion for default judgment against defendant Nevada

18 Association Services, Inc. ("NAS").  (ECF No. 14).  NAS has failed to respond to both the

19 complaint and the motion for default judgment.

20 **I.    Introduction**

21    On July 1, 2016, plaintiff filed a complaint in relation to the September 30, 2013, non-

22 judicial foreclosure sale of the real property at 8416 Haven Brook Court, Las Vegas, Nevada.

23 (ECF No. 1).  Against the HOA and NAS, plaintiff asserts the following causes of action: (1) quiet

24 title/declaratory judgment; (2) breach of Nevada Revised Statute ("NRS") § 116.1113's obligation

25 of good faith; and (3) wrongful foreclosure.  (*Id.*).  Against Premier One Holdings, Inc.

26 ("Premier"), plaintiff asserts a "claim" for injunctive relief.  (*Id.*).[1]

27

28    [1] As an initial matter, the court dismisses, without prejudice, claim four because the court
follows the well-settled rule that a claim for "injunctive relief" standing alone is not a cause of
action.  *See, e.g., In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091,

James C. Mahan
U.S. District Judge

1    NAS was served on July 5, 2016. (ECF No. 7). Consequently, an answer from NAS was

2    due on July 26, 2016. (*Id.*). Plaintiff filed a motion for default judgment on January 4, 2017.

3    (ECF No. 14). To date, NAS has not responded.[2]

4    **II.    Legal Standard**

5    The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief

6    can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and

7    plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

8    Although rule 8 does not require detailed factual allegations, it does require more than labels and

9    conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic

10   recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662,

11   677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed

12   with nothing more than conclusions. *Id.* at 678–79.

13   To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state

14   a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff

15   pleads factual content that allows the court to draw the reasonable inference that the defendant is

16   liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent

17   with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does

18   not meet the requirements to show plausibility of entitlement to relief. *Id.*

19   In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply

20   when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations

21   contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.*

22   Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

23   at 678. Where the complaint does not permit the court to infer more than the mere possibility of

24   misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.*

25   ───────────────

26   1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL
     1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an

27   independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201
     (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action.").

28   [2]   This court will grant the parties' stipulation for Premier to amend its answer to include
     counterclaims against BNYM. (ECF No. 29).

James C. Mahan
U.S. District Judge

1   at 679.   When the allegations in a complaint have not crossed the line from conceivable to

2   plausible, plaintiff's claim must be dismissed.   *Twombly*, 550 U.S. at 570.

3        The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202,

4   1216 (9th Cir. 2011).   The *Starr* court held:

5        First, to be entitled to the presumption of truth, allegations in a complaint or
6        counterclaim may not simply recite the elements of a cause of action, but must
         contain sufficient allegations of underlying facts to give fair notice and to enable
7        the opposing party to defend itself effectively.   Second, the factual allegations that
         are taken as true must plausibly suggest an entitlement to relief, such that it is not
8        unfair to require the opposing party to be subjected to the expense of discovery and
9        continued litigation.

10   *Id.*

11   **III.    Discussion**

12        As an initial matter, the court finds that plaintiff's complaint can be considered in its

13   entirety because the mediation requirement of NRS 38.310 has been satisfied.   Nev. Rev. Stat. §

14   38.310.   The parties participated in Nevada Real Estate Division's alternate dispute resolution

15   program on July 7, 2016, and that mediation was unsuccessful.   (ECF No. 16 at 2); (*see also* ECF

16   No. 23).

17        A.   *Motion to dismiss*

18             i.   *Quiet title/declaratory relief*

19                  a.   *Standing*

20        Under Nevada law, "[a]n action may be brought by any person against another who claims

21   an estate *or interest* in real property, adverse to the person bringing the action for the purpose of

22   determining such adverse claim."   Nev. Rev. Stat. § 40.010 (emphasis added).   "A plea to quiet

23   title does not require any particular elements, but each party must plead and prove his or her own

24   claim to the property in question and a plaintiff's right to relief therefore depends on superiority

25   of title."   *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal

26   quotation marks and citations omitted).   Therefore, plaintiff must show that its claim to the

27   property is superior to all others to succeed on its quiet title action.   *See also Breliant v. Preferred*

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1    *Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests

2    with the plaintiff to prove good title in himself.").

3           The HOA relies heavily on the argument that BNYM cannot bring a quiet title claim

4    because it does not allege that it holds a title in the contested parcel. (ECF No. 11). However, the

5    mere allegation of an interest in the land is sufficient to assert this claim. *See* Nev. Rev. Stat. §

6    40.010.

7                                      *b.  Proper party*

8           Under Federal Rule of Civil Procedure 19(a), a party must be joined as a "required" party

9    in two circumstances: (1) when "the court cannot accord complete relief among existing parties"

10   in that party's absence, or (2) when the absent party "claims an interest relating to the subject of

11   the action" and resolving the action in the person's absence may, as a practical matter, "impair or

12   impede the person's ability to protect the interest," or may "leave an existing party subject to a

13   substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the

14   interest." Fed. R. Civ. P. 19(a)(1).

15          The HOA maintains that it does not have a current adverse interest in the property as

16   required by a plea to quiet title under NRS 40.010 and asks the court to dismiss it from this claim.

17   (ECF No. 11 at 6–7). The HOA states it does not claim an interest in the property, as any interest

18   the HOA had was extinguished with the foreclosure of the delinquent assessment lien. (*Id.*).

19          This court has previously held that dismissal is appropriate when the holder of the prior

20   deed of trust seeks a declaration that the deed of trust survived foreclosure sale. *See, e.g.*, *Bayview*

21   *Loan Servicing, LLC v. SFR Invs. Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2015 WL 2019067,

22   at *1 (D. Nev. May 1, 2015). In contrast, this court has also held that dismissal is inappropriate in

23   these circumstances when the holder of the prior deed of trust challenges the validity of the

24   foreclosure sale. *See, e.g.*, *Nationstar Mortg., LLC v. Berezovsky*, No. 2:15-CV-909-JCM-CWH,

25   2016 WL 1064477, at *3–4 (D. Nev. Mar. 2016). Therefore, the nature of the remedy sought

26   dictates the necessary parties.

27          Here, the court cannot dismiss the HOA as a party to the quiet title action because the HOA

28   is, at least nominally, a necessary party to the suit due to plaintiff's allegations that the foreclosure

**James C. Mahan**
**U.S. District Judge**

1    sale is void. (ECF No. 1). If BNYM succeeds in invalidating the foreclosure sale, ownership of

2    the property would likely revert to the borrower, BNYM may be entitled to recover from the HOA,

3    and the HOA's lien against the property may be restored. *See Nationstar Mortg., LLC v.*

4    *Maplewood Springs Homeowners Ass'n,* No. 2:15-cv-1683-JCM-CWH, 2017 WL 843177, at *6

5    (D. Nev. Mar. 1, 2017). Consequently, the HOA is, in some regard, a necessary party to the suit.

6    The HOA's motion to dismiss is therefore denied with respect to BNYM's quiet title claim.

7                                    *c.  Due process*[3]

8         BNYM alleges that the HOA lien statute is facially unconstitutional because "Nevada's

9    scheme of non-judicial HOA super priority foreclosure lacks any pre-deprivation notice

10   requirements or post deprivation redemption options that are necessary components of due

11   process." (ECF No. 1 at 8).

12        BNYM buttresses their due process allegations with reference to the Ninth Circuit's

13   holding in *Bourne Valley Court Trust v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016),

14   *cert. denied*, --- S. Ct. ----,  No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne*

15   *Valley*"). (ECF No. 22 at 4–8).  The Ninth Circuit held that NRS 116.3116's "opt-in" notice

16   scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the

17   lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due

18   process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as

19   identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in"

20   provision that unconstitutionally shifts the notice burden to holders of the property interest at risk.

21   *See id.*

22        To state a procedural due process claim, a claimant must allege "(1) a deprivation of a

23   constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

24   protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir.

25   _____

26        [3] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except
     where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are

27   to the version of the statutes in effect in 2013–14, when the events giving rise to this litigation
     occurred.  These revisions are why, as the HOA contends, "NRS 116.31168 incorporates the whole

28   of NRS 107.090." (ECF 28 at 6).  At the time of the 2013 foreclosure sale in the present case, the
     whole of NRS 107.090 was not incorporated into the statute.

James C. Mahan
U.S. District Judge

1998).  BNYM has satisfied the first element as a deed of trust is a property interest under Nevada law.  *See* Nev. Rev. Stat. § 107.020, *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale").  However, BNYM fails on the second prong.

BNYM cannot litigate a due process claim in the absence of its own disadvantage.  *See also Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").  The HOA argues that the foreclosure sale did not violate plaintiff's right to procedural due process.  (ECF No. 28 at 3–6).  Dismissal on the issue of due process is inappropriate insofar as defendants' actions satisfied due process because they were "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, plaintiff appeared to have actual notice of the risk of foreclosure proceedings, demonstrated by the allegation that "BANA [BNYM's predecessor in interest] requested a ledger from Desert Shores, through its agent, NAS, identifying the super-priority amount allegedly owed to Desert Shores."  (ECF No. 1 at 5).  Plaintiff erroneously contends that any factual issues concerning actual notice are irrelevant.  (ECF No. 22 at 7–8); *see Jones v. Flowers*, 547 U.S. 220, 226 (2006) ("Due process does not require that a property owner receive actual notice . . . .").  However, this finding is not sufficient to dismiss the claim because the complaint alleges multiple grounds for its challenge of title.  (ECF No. 1).

*d.  Commercially unreasonable*

In *Shadow Wood Homeowners Ass'n v. N.Y. Cmty. Bancorp. Inc.*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is both a "grossly inadequate" sales price and "fraud, unfairness, or oppression."  366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 858 (D. Nev. Apr. 29, 2016).  In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is

1    not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression."

2    366 P.3d 1105, 1112 (Nev. 2016); *see also Long v. Towne*, 639 P.2d 528 (Nev. 1982).

3    　　Because BNYM fails to allege fraud, unfairness, or oppression, the complaint fails to allege

4    a commercially unreasonable foreclosure sale on its face. *See* (ECF No. 1). Despite the fact that

5    the HOA erroneously relies on the contention that the doctrine of commercial unreasonableness

6    does not apply to Chapter 116 foreclosure sales, BNYM would be unable to set the foreclosure

7    sale aside on the basis of commercial unreasonability. (ECF No. 28).

8    　　　　　　　　　　　　*e. Rejected tender*

9    　　In the instant motion to dismiss, BNYM argues that BANA's August 2, 2012, payment of

10   $864.63 to NAS preserves the seniority of BNYM's deed of trust. (ECF No. 1 at 5–6). The court

11   disagrees with this assertion. Neither BNYM nor BANA tendered the amount sent forth in the

12   notice of default, which stated an amount due of $2,943.76. (*Id.* at 4).

13   　　Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority

14   portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.

15   *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Invs. v. U.S. Bank*, 334 P.3d 408, 414 (Nev.

16   2014) ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of

17   its security . . . .") ("*SFR Investments*"); *see also, e.g., 7912 Limbwood Ct. Trust v. Wells Fargo

18   Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid

19   this result, they readily can preserve their security interests by buying out the senior lienholder's

20   interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas

21   Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

22   　　BNYM asserts that "BANA and its counsel were forced to attempt to calculate the super-

23   priority amount claimed by Desert Shores." (ECF No. 1 at 5). To the contrary, if BNYM or

24   BANA wanted to stop the foreclosure proceedings, it could have paid the amount due: $2,943.76.

25   BNYM merely presumed, without adequate support, that BANA's offer to pay would satisfy the

26   superpriority lien. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a

27   deed of trust only when a subordinate interest has failed to make good the deficiency in

28

James C. Mahan
U.S. District Judge

- 7 -

1    performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered

2    foreclosure sale if the deficiency is made good at least 5 days prior to sale).

3         The notice of default recorded, set forth an amount due of $2,943.76. (ECF No. 1 at 4).

4    Rather than tendering the $2,943.76 due so as to preserve its interest in the property and later

5    seeking a refund of any difference, BANA elected to contact NAS and tendered $864.63, which

6    was calculated to include "nine-months of common assessments as identified in Desert Shores's

7    ledger" and "reasonable collection costs." (*Id.* at 5–6). Although BNYM contends that nine

8    months of common assessments was "the maximum amount the HOA could claim under the super-

9    priority lien" and that BANA paid more than was required, its calculations are erroneous. (*Id.* at

10   5). BNYM and BANA both ignored the fact that the superpriority lien portion consists of "the last

11   nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the

12   subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at

13   411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The

14   superpriority lien consists only of unpaid assessments and certain charges specifically identified

15   in § 116.31162.").

16        This course of action was based on BANA's unwarranted assumption that the amount

17   stated in the notice included more than what was due. *See SFR Investments*, 334 P.3d at 418

18   (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had

19   BANA paid the amount set forth in the notice of default ($2,943.76), the HOA's interest would

20   have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1).

21        After failing to use the legal remedies available to BNYM/BANA to prevent the property

22   from being sold to a third party—for example, seeking a temporary restraining order and

23   preliminary injunction and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010,

24   40.060)—BNYM now seeks to profit from its own failure to follow the rules set forth in the

25   statutes. *See generally, e.g.*, *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846

26   (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned

27   transaction and merely makes a mistake as to the legal consequences of his act, equity should

28   normally not interfere, especially where the rights of third parties might be prejudiced thereby.");

*Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day.").

Based on the foregoing, BNYM has failed to adequately establish that it tendered a sufficient amount prior to the foreclosure sale so as to prevent the foreclosure sale and ensure the senior deed of trust survived the sale.

### f.    Good title

Finally, the HOA attacks the quiet title claim by stating that plaintiff has failed to establish superiority of title. (ECF No. 11 at 4–5). Normally, the court would not adjudicate the essential question in this case, here, title. (ECF No. 11). In the instant motion to dismiss, however, the court finds that although BNYM has standing to bring the claim and that the HOA is a proper party, BNYM has failed to plead a case for good title on the face of the complaint.

There was no violation of due process. (ECF Nos. 1 at 7–8). There was no allegation of fraud, unfairness, or oppression to support a finding of commercial unreasonability. (ECF Nos. 1 8–9). There was no adequate tender to discharge the superpriority lien described in the notice of default. (ECF No. 1 at 5–6). Accordingly, the HOA's motion to dismiss will be granted as to quiet title because the complaint fails on its face to allege good title in BNYM.

### ii.    Breach of NRS § 116.1113

### a.    Good faith and fair dealing

Plaintiff's alleged conduct—on the face of the complaint—precludes it from seeking equitable relief under the unclean hands doctrine. This doctrine "bars a party from receiving equitable relief because of that party's own inequitable conduct." *Las Vegas Fetish & Fantasy Halloween Ball, Inc. v. Ahern Rentals, Inc.*, 182 P.3d 764, 766 (Nev. 2008) (quoting *Food Lion, Inc. v. S.L. Nusbaum Ins. Agency, Inc.*, 202 F.3d 223, 228 (4th Cir. 2000)).

"The application of the unclean hands doctrine raises primarily a question of fact." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). However, the court is

James C. Mahan
U.S. District Judge

- 9 -

1    comfortable applying this doctrine in such an early stage of this litigation because *plaintiff's own*
2    *asserted facts* make clear that equitable relief is not warranted.  *See* (ECF No. 1).

3         To preclude equitable relief, the party's inequitable conduct must be "unconscientious,
4    unjust, or marked by the want of good faith" and sufficiently connected with the "subject-matter
5    or transaction in litigation."  *Las Vegas Fetish & Fantasy Halloween Ball, Inc.*, 182 P.3d at 766.
6    (citing *Income Investors v. Shelton*, 101 P.2d 973, 974 (Wash. 1940)).  Two factors must be
7    considered when assessing if a party's conduct is sufficiently connected to the action: "(1) the
8    egregiousness of the misconduct at issue, and (2) the seriousness of the harm caused by the
9    misconduct."  *Id.* (citing *Income Investors*, 101 P.2d at 974).  Plaintiff's refusal to utilize any pre-
10   foreclosure remedy to prevent the sale bars it from seeking equitable relief in setting aside the
11   relevant foreclosure.

12        As mentioned above, the holder of a first deed of trust may pay off the superpriority portion
13   of an HOA lien to prevent the foreclosure sale from extinguishing that security interest.  *See* Nev.
14   Rev. Stat. § 116.31166(1).  Plaintiff created the problem by electing not to pay the amount set forth
15   in the recorded notice of default, which was $2,943.76.  (ECF No. 1 at 4).  Had plaintiff paid the
16   amount set forth in the notice of default ($2,943.76), the HOA's interest would have been
17   subordinate to the first deed of trust.  *See* Nev. Rev. Stat. § 116.31166(1).

18        As similarly discussed above, plaintiff seeks to benefit from its failure to use the legal
19   remedies available to it.  *See generally* Nev. Rev. Stat. § 107.080.  As a result, the plaintiff will be
20   barred from equitable relief by the doctrine of unclean hands.  *cf. Barkley's Appeal. Bentley's*
21   *Estate*, 2 Monag. at 277.

22                          *b.  Duty by statute*

23        BNYM fails to properly plead a duty imposed by NRS Chapter 116, let alone one that the
24   HOA breached by advancing its nonjudicial foreclosure proceedings as authorized by the statute.
25   *See* (ECF No. 1).  The foreclosure proceeding in this case derives from NRS Chapter 116, not from
26   the CC&Rs.  Nev. Rev. Stat. § 116.31162.  Furthermore, BNYM's reading of the CC&Rs is
27   inconsistent with the holding in *SFR Investments*.  334 P.3d at 419; *see also 7912 Limbwood Court*
28   *Trust*, 979 F. Supp. 2d at 1152–53.

James C. Mahan
U.S. District Judge

1    Moreover, BNYM alleges that the HOA failed to disclose the superpriority amount that it

2    was foreclosing on. (ECF No. 1 at 4–5). Under NRS Chapter 116, however, BNYM was obligated

3    to pay the deficiency in payment described by the notice of default. Nev. Rev. Stat. §

4    116.31162(1)(b). Nowhere in Chapter 116 is the duty to describe specifically the amount due on

5    the superpriority portion of the HOA lien. *See generally* Nev. Rev. Stat. § 116; *see also SFR*

6    *Investments*, 334 P.3d at 418. Accordingly, the court will grant defendant's request to dismiss this

7    claim.

8    iii.   *Wrongful foreclosure*

9    BNYM has sufficiently pleaded a cause of action for wrongful foreclosure insofar as the

10   foreclosure extinguishing the senior deed of trust would create standing to sue the HOA. (ECF

11   No. 1 at 11–12); *see also Mennonite Bd. of Missions*, 462 U.S. at 798. Despite having established

12   standing, BNYM has not sufficiently pleaded facts that could warrant wrongful foreclosure. (*Id.*)

13   The HOA contends that the wrongful foreclosure claim fails as a matter of law because BNYM

14   cannot prove that the homeowner was in default. (ECF No. 11 at 7–8). The court disagrees. On

15   the face of the complaint, BNYM alleges:

16        Because BANA satisfied the super-priority portion of Desert Shores's lien prior to
          the foreclosure sale there was no default in the super-priority component of Desert
17        Shores's lien at the time of the foreclosure sale and the foreclosure was wrongful to
          the extent any defendant contends it extinguished the senior deed of trust
18

     (ECF No. 1 at 11).

19

20   If the HOA's superpriority lien had been discharged, the HOA would have been precluded

21   from foreclosing on it. As discussed above, however, BNYM was incorrect in assuming that the

22   amount listed in the notice of default is more than the superpriority lien needed to preserve the

23   seniority of the deed of trust. *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's

24   sale under a deed of trust only when a subordinate interest has failed to make good the deficiency

25   in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered

26   foreclosure sale if the deficiency is made good at least 5 days prior to sale). Accordingly, the

27   motion to dismiss will be granted as to the wrongful foreclosure claim.

28   . . .

**James C. Mahan**
**U.S. District Judge**

*B.  Motion for default judgment*

Default judgment is appropriate "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).  The party must apply to the court for default judgment when the claim's sum value is uncertain.  Fed. R. Civ. P. 55(b)(2).

Obtaining a default judgment is a two-step process:

> First, the party seeking a default judgment must file a motion for entry of default with the clerk of a district court by demonstrating that the opposing party has failed to answer or otherwise respond to the complaint, and, second, once the clerk has entered a default, the moving party may then seek entry of a default judgment against the defaulting party.

*UMG Recordings, Inc. v. Stewart*, 461 F. Supp. 2d 837, 840 (S.D. Ill. 2006).

The choice whether to enter a default judgment lies within the discretion of the trial court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  When determining whether to grant a default judgment, the trial court should consider the seven factors articulated in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

When applying the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977); *see also* Fed. R. Civ. P. 8(d).

Defendant NAS was served on July 5, 2016.  (ECF No. 7).  An answer by NAS was required by July 26, 2016.  To date, appearing from the declaration of counsel for plaintiff and other evidence as required by Rule 55(a) of the Federal Rules of Civil Procedure, NAS has failed to plead or otherwise defend in this action as directed and as provided in the Federal Rules of Civil Procedure.

At this time, it is clear that plaintiff's substantive claims against NAS lack sufficient merit to continue. *See Eitel*, 782 F.2d at 1471–72.  Without a showing that BNYM has any substantive claims upon which relief can be granted, default judgment is inappropriate. *Id.*  BNYM's

complaint has not sufficiently alleged a cause of action for wrongful foreclosure, breach of NRS § 116.1113, or quiet title. *See generally* (ECF No. 1). Therefore, plaintiff's motion for default judgment against NAS will be denied.

**IV.    Conclusion**

In sum, BNYM's complaint failed to plead a violation of due process. BNYM did not provide sufficient tender to preserve its senior deed of trust and discharge the superpriority lien described in the notice of default. Further, BNYM is barred from making claims in equity by the doctrine of unclean hands. Finally, BNYM has not adequately pleaded a claim for wrongful foreclosure.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the parties' stipulation for Premier to amend its answer to include counterclaims against BNYM (ECF No. 29) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant Desert Shores Community Association's motion to dismiss (ECF No. 11) be, and the same hereby is, GRANTED, without prejudice.

IT IS FURTHER ORDERED that plaintiff's motion for default judgment against defendant Nevada Association Services, Inc. (ECF No. 14) be, and the same hereby is, DENIED.

DATED July 20, 2017.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 13 -